# Koretke v. Irwin & Company.

*Action for the Recovery of Penalty for Unreasonable Detention at a Public Ferry.*

1. *Public ferry; duty as to ferriage after dark.*—A rule adopted by the owners of a public ferry not to put any person across the ferry after dark and before daylight, affords no defense to an action under Code, § 1452, unless it is also be proven that some cause against which the owner of the ferry could not provide rendered the crossing dangerous or that at the particular time of the detention the attempt to cross would have been unsafe and that the detention was only for the time that such cause existed.

2. *Same.*—It is not a sufficient excuse for "unreasonable detention" at a public ferry for the owners to show that by reason of the character of the construction of the ferry boat, or of the appliances for operating the boat across the river, or because of an insufficient number of ferrymen employed, it would not be safe to cross the river after dark.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The plaintiff and several companions rode on bicycles from Calera to the city of Montgomery on the 20th November 1892, and at 6 p. m. of that day arrived at defendants' ferry across the Alabama river at the city of Montgomery, plaintiff and his companions being on the bank of the river opposite said city. It was sufficiently light for them to see the ferry boat and a man on the city side of the river, and upon calling to the man to come and take them across, he answered that he could not do so, that the regular ferryman had gone up town, and that he could not run the boat. Upon plaintiff's asking him if he could find the ferryman up town, he replied "yes,"—plaintiff then offered to pay him if he would get the ferryman or some one to put his party across the river—stating that he wished to take the 9 o'clock p. m. train for Birmingham, but it was not shown that this person

had any connection with the defendants' ferry or was in their employ further than appears from what is above set forth. The residence of the ferryman was directly opposite where the plaintiff's party were, and they could see lights in the windows thereof until its occupants retired. They endeavored to attract attention by hallooing and otherwise, and failing in that, they were compelled to remain where they were, without shelter, until 6:10 a. m. next morning, when, while crossing, the ferryman told them he left the ferry after dark, went up town, and was not at the ferry, when plaintiff asked to be put across. One of the rules adopted by the owners for the regulation of the ferry was, that the boat should be tied up after dark and not be permitted to run until daylight, which rule defendants' testimony showed was general with ferryman on said river and was necessary because of the danger of ferriage after dark from the passage of boats, lumber rafts and logs, which could not be guarded against. Also because of the inability of the ferryman, after dark, to give the proper angle to the boat in crossing the current. That if the angle was too obtuse and the whole side of the ferry boat be turned to the current it (the current) would strike with such force as to break the wire or the fastenings at either end; or if the angle should be too acute the current would drive the boat with such force as to break it in making the landing. That the ferry is at a bend in the river where the current is swift, and at times, dangerous.

LOMAX & LIGON, for the appellant.

A. A. WILEY, for the appellees.

COLEMAN, J.—The action was instituted before a justice of the peace, to recover the statutory penalty imposed by section 1452 of the Code. The section reads as follows: "Any person unreasonably detained at a public ferry, toll bridge, or causeway, may for each detention recover of the owner ten dollars before any justice of the county." Plaintiff was detained from 5:45 p. m. or 6 o'clock p. m., until six o'clock a. m. of the following morning. These facts being shown by the plaintiff, it devolved upon the defendants to show the circumstances, which justified such detention. The defense relied upon was a rule established by the owners of the ferry not to put any person accross the ferry after dark, until day light. Does the statute authorize the establishment of such a rule, and was the enforcement of the rule under the circumstances, as shown by the evidence, reason-

[Koretke v. Irwin & Co.]

able? Very clearly not. If it had been proven that the
river was unusually swollen, and for this reason dangerous
to cross after dark, or that there was a strong wind, which
made it dangerous, these causes might be sufficient, under
the statute, to cause the delay. Or if it had been proven
that a steamboat was approaching, or immediately expected,
or that lumber rafts were approaching the ferry, which ren-
dered the crossing for the time being dangerous, it would
not be unreasonable to detain the person desiring to cross,
until the cause had ceased to exist, and so of any other cause,
which the keeper of the ferry could not provide against or
control, and which would render the attempt to cross the
river at the partiular time, unsafe.

The statute contemplates that the owners and keepers of
public ferries shall "keep safe and convenient boats, with a
sufficient number of ferrymen."—Section 1444 of the Code
of 1886. It is not a sufficient excuse for "unreasonable de-
tention" to show that by reason of the character of the con-
struction of the ferry boat, or of the appliances operating
the boat across the river, or because of an insufficient num-
ber of ferrymen employed, it would not be secure to cross
the river after dark. When a party applies for and obtains
a license to keep a public ferry, it is his duty to provide "safe
and convenient boats and a sufficient number of ferrymen"
necessary to prevent "unreasonable detention" at the partic-
ular ferry he is licensed to keep. The precise question un-
der consideration came before this court at a very early day.
In the case of *Pate v. Henry*, 5 Stew. & Port. 101, it was
held that "The keeper of a public ferry is bound to trans-
port persons across the stream after night; and a failure to
do so will subject him to an action under the statute without
a suit on the bond." In that case, the party reached the
ferry at six o'clock. He was not put across until next morn-
ing. In that case, as in this, the defense was that the "owner
of a ferry was not bound to put any person across the river
between dark and daylight." On appeal, this court held
that the defense was not good. In the opinion it is said:
"If the wind was high, or the night dark, when the applica-
tion was made to him, so as to expose him to danger in an
attempt to cross; or were it late at night after the usual bed
time, it might under some circumstances, as where the ferry
was some distance from his dwelling, and probably in many
other cases, be a sufficient excuse." The present statute is
not in every particular the same as when the opinion in 5
Stew. & Port. *supra* was rendered; but so far as the question
under review is affected, there is no material difference. It

[Wood et al. v. Holly Manufacturing Co.]

is unnecessary to refer to the facts, farther than to say we do not think the evidence sustained the defense attempted to be made.

Under defendants' own showing, we are of opinion that plaintiff was entitled to recover.

The judgment of the trial court is reversed, and judgment will be here rendered for the plaintiff.

Reversed and rendered.